# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBBIN E BLYTHE** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-5184** |
| **OFFSHORE SERVICE VESSELS, L.L.C.** | **SECTION: "G" (4)** |

## <u>ORDER</u>

Pending before this Court is Defendant Louisiana Machinery Company, LLC's ("Louisiana Machinery") "Motion for Summary Judgment."[1] In this litigation, Plaintiff Robbin Blythe ("Plaintiff") alleges that Defendants Louisiana Machinery, Offshore Service Vessels, L.L.C. ("OSV"), Caterpillar Inc. ("Caterpillar"), and Massy Cat Ltd. ("Massy Cat") are liable for injuries he incurred from a fire while working aboard the vessel AHTS EDISON CHOUEST.[2] Accordingly, Plaintiff brings this action pursuant to the Jones Act,[3] general maritime law, and the tort laws of Trinidad and Tobago.[4] In the instant motion, Louisiana Machinery argues that Plaintiff's claims against it arising under the laws of Trinidad and Tobago should be dismissed as a matter of law because choice-of-law factors weigh in favor of applying general maritime law and the Court has already dismissed Plaintiff's claims under general maritime law.[5] Having considered the motion, the memoranda in support and opposition, oral argument from both parties, and the

---

[1] Rec. Doc. 43.

[2] *Id*. at 1–2.

[3] 46 U.S.C.A. §30104

[4] Rec. Doc. 1 at 1.

[5] Rec. Doc. 34.

1

applicable law, the Court will deny the motion.

## I. Background

### A.     *Factual Background*

Plaintiff, a citizen and resident of Panama, alleges that on January 21, 2015, he suffered injuries, specifically post-traumatic stress disorder, as the result of being trapped aboard the vessel AHTS EDISON CHOEST while a fire occurred in the engine room.[6] Plaintiff alleges that at the time, he was employed as a "seaman" for OSV, a Louisiana company that owned and operated the vessel.[7] Plaintiff alleges that when the fire occurred, the vessel was located off the coast of Trinidad and Tobago.[8]

### B.     *Procedural Background*

Plaintiff filed a complaint in this Court on May 24, 2017, bringing claims solely against OSV under the Jones Act and general maritime law.[9] Plaintiff then filed a supplemental and amending complaint on April 16, 2018, with leave of Court, adding claims against Caterpillar, Louisiana Machinery, and Massy Cat under general maritime law and under the laws of Trinidad and Tobago.[10]

---

[6] Rec. Doc. 1 at 1–2.

[7] *Id.*

[8] *Id.*

[9] Rec. Doc. 1.

[10] Rec. Doc. 16.

On June 13, 2018, Defendant Caterpillar filed a motion to dismiss Plaintiff's general maritime law claims against Caterpillar, arguing that the claims were time-barred.[11] On July 13, 2018, Defendant Louisiana Machinery filed a similar motion to dismiss Plaintiff's general maritime law Claims against Louisiana Machinery.[12] On August 29, 2018, the Court granted both motions to dismiss, dismissing Plaintiff's general maritime law claims against Caterpillar and Louisiana Machinery, but reserving all remaining claims arising under the laws of Trinidad and Tobago.[13]

On March 19, 2019, Defendant Louisiana Machinery filed the instant motion, arguing that Plaintiff has no viable claim under the laws of Trinidad and Tobago.[14] On April 2, 2019, Plaintiff filed an opposition and requested oral argument on the motion.[15] On April 8, 2019, Plaintiff filed a supplemental memorandum in opposition.[16] On April 8, 2019, Louisiana Machinery filed a reply.[17] On April 10, 2019, the Court heard oral argument on the instant motion.

## II. Parties' Arguments

### A. *Louisiana Machinery's Arguments in Support of the Motion for Summary Judgment*

In the instant motion, Louisiana Machinery argues that Plaintiff cannot prove that the laws of Trinidad and Tobago apply, thus the remaining claims based on these laws should be dismissed

---

[11] Rec. Doc. 25.

[12] Rec. Doc. 30.

[13] Rec. Doc. 34.

[14] *Id.*

[15] Rec. Docs. 46, 47.

[16] Rec. Doc. 53.

[17] Rec. Doc. 54.

with prejudice.[18] Louisiana Machinery argues that Plaintiff's negligence and tort claims arise under general maritime law, and that Plaintiff's claims were previously dismissed under general maritime law because the claims were not filed within the three-year prescriptive period.[19]

Louisiana Machinery argues that to set aside the general maritime law and apply the laws of Trinidad and Tobago, Plaintiff must demonstrate that the factors of the *Lauritzen-Romero-Rhoditis* test developed by the United States Supreme Court favor application of the laws of Trinidad and Tobago.[20] Louisiana Machinery asserts that the eight factors of the test are:

(1) the place of the wrongful act,

(2) the law of the flag of the vessel involved,

(3) allegiance or domicile of the injured seaman,

(4) allegiance of the defendant shipowner,

(5) the place of the shipowner's base of operation,

(6) the place where the contract of employment was made,

(7) the inaccessibility of a foreign forum, and

(8) the law of such a foreign forum.[21]

Louisiana Machinery argues that the factors favor the application of general maritime law as this

---

[18] Rec. Doc. 43-2 at 4.

[19] *Id.* at 4–5.

[20] *Id.* at 5 (citing *Lauritzen v. Larsen*, 345 U.S. 571, 583-590 (1953); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382 (1959); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970)).

[21] *Id.* (citing *Lauritzen*, 345 U.S. at 583-590; *Romero*, 358 U.S. at 382; *Hellenic Lines Ltd.*, 398 U.S. at 309).

matter only bears a "remote and tenuous connection to Trinidad and Tobago."[22]

Regarding the first factor, place of the wrongful act, Louisiana Machinery argues that while the wrongful act occurred on a vessel 35 miles off the coast of Trinidad, this factor "is accorded little weight in traditional maritime cases, in which the locality of the ship changes constantly."[23]

Louisiana Machinery argues that the other factors weigh in favor of applying general maritime law in this case.[24] Regarding the law of the flag of the vessel, Louisiana Machinery asserts the vessel is flagged under the laws of the United States and that courts hold this factor to be of "cardinal importance."[25] Regarding the allegiance or domicile of the injured seaman, Louisiana Machinery asserts that Plaintiff is a citizen of Panama who lives in Panama, but describes himself as a "dual citizen" of the United States and has worked for the United States Navy and is presently working for United States companies.[26] Regarding the allegiance of the defendant shipowner, Louisiana Machinery asserts that both Louisiana Machinery and the shipowner, OSV, reside in Louisiana.[27] Regarding the base of operations for the vessel, Louisiana Machinery asserts that Louisiana is the base of operations for OSV and itself.[28] Regarding the place of contract, Louisiana Machinery argues that it has no contract with Plaintiff and that courts do not place "substantial influence on this factor," but that the contract between OSV and

---

[22] *Id.* at 6.

[23] *Id.* at 7 (citing *Lauritzen*, 345 U.S. at 583).

[24] *Id.* at 8–12.

[25] *Id.* at 8 (citing *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 282 (5th Cir. 1991)).

[26] *Id.* at 9.

[27] *Id.*

[28] *Id.* at 9–10.

Louisiana Machinery to repair the vessel was executed in the United States.[29] Regarding the inaccessibility of a foreign forum, Louisiana Machinery argues that this factor is irrelevant because Plaintiff availed himself to the laws of the United States and general maritime law by filing in this Court and cited no reason he could not seek redress in Trinidad and Tobago if necessary.[30] Finally, Louisiana Machinery asserts that "the law-of-the-forum factor in the *Lauritzen* analysis is patently United States, rather than foreign, law."[31] Louisiana Machinery argues that the Court should apply general maritime law because all the factors but one favor application of general maritime law over the laws of Trinidad and Tobago.[32]

## B. *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In response, Plaintiff agrees with Louisiana Machinery's assertion that the Court should apply the *Lauritzen* choice-of-law factors, but argues that here the factors weigh in favor of applying the laws of Trinidad and Tobago.[33] First, Plaintiff argues that the place of the wrongful act weighs in favor of applying the laws of Trinidad and Tobago because Plaintiff's allegations against Louisiana Machinery pertain to their "negligent distribution repair, training, service, and inspection conducted as part of the maintenance of the AHTS EDISON CHOUEST's engine equipment," which occurred in Trinidad.[34] Plaintiff also argues that the base of operations factor

---

[29] *Id*. at 10 (citing *Lauritzen*, 345 U.S. at 588).

[30] *Id*. at 11.

[31] *Id.* (citing *Fogleman*, 920 F.2d at 283).

[32] *Id*. at 11–12.

[33] Rec. Doc. 46 at 5.

[34] *Id.*

weighs in favor of applying the laws of Trinidad and Tobago because "the service, repair, inspection, and maintenance of the vessel's engine were conducted in Trinidad, and those operations fell under the supervision of the technicians in Trinidad."[35]

Plaintiff also argues that some factors are neutral. Regarding the law of the flag, Plaintiff argues that the factor does not apply to Louisiana Machinery because Louisiana Machinery is not the shipowner.[36] Regarding the allegiance or domicile of the injured seaman, Plaintiff argues that while he is a citizen and resident of Panama and has lived in the United States previously, he worked in Trinidad aboard the AHTS EDISON CHOUEST for approximately five years before the alleged incident, thus this factor is should weigh neutrally.[37] Regarding the place of contract, Plaintiff argues that there is no contract between Plaintiff and Louisiana Machinery, and Louisiana Machinery provides no support for its assertion that a repair contract in this case was executed in the United States.[38]

Additionally, while Plaintiff admits that some factors weigh in favor of applying United States law, it argues these factors are not controlling, and disputes the applicability of other factors. Plaintiff acknowledges that Louisiana Machinery is domiciled with its principal place of business in the United States.[39] Plaintiff argues that inaccessibility of the foreign forum should not apply

---

[35] *Id.* at 8–9.

[36] *Id.* at 6.

[37] *Id.* at 6–7.

[38] *Id.* at 9.

[39] *Id.* at 7.

strongly here because it is only relevant to a *forum non conveniens* analysis.[40] Plaintiff argues that the law of the forum is accorded little weight by courts and thus should be considered neutral here.[41]

Plaintiff argues that in totality the factors weigh in favor the applying the laws of Trinidad and Tobago because Trinidad is the place where all of the events giving rise to this lawsuit took place, including the day-to-day operations concerning the repair, maintenance, service, and inspection of the AHTS EDISON CHOUEST.[42] Plaintiff argues that the factors that weigh against applying foreign law, the allegiance of the defendant, the law of the flag, and law of the forum, are traditionally less important in this context.[43] Finally, Plaintiff argues that the remaining factors, the allegiance of the plaintiff and place of contract, are, if anything, neutral and not relevant in the instant matter.[44]

### C.     *Plaintiff's Arguments in Further Opposition to the Motion for Summary Judgment*

In further opposition to the Motion for Summary Judgment, Plaintiff argues that he has obtained additional documentation that allows him to expand his argument.[45] Plaintiff attaches a "Co-Operation Agreement" between Louisiana Machinery and Massy Cat, relating to their work together as authorized Caterpillar dealers in Trinidad and Tobago.[46] Plaintiff asserts that the

---

[40] *Id.*

[41] *Id.* at 10 (citing *Rationis Enterprises Inc. v. Hyundai Mipo Dockyard Co.,* 426 F.3d 580 (2nd Cir. 2005)).

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] Rec. Doc. 53-2 at 2.

[46] *Id*. at 1–2.

agreement provides that it "shall be governed by the laws of the Republic of Trinidad and Tobago."[47]

Plaintiff asserts that this agreement is relevant to several of the choice-of-law factors.[48] First, Plaintiff asserts that the injuries were caused by negligent acts or omissions that stemmed from the Co-Operation Agreement.[49] Plaintiff asserts that because the agreement provides that it is subject to the laws of Trinidad and Tobago, the place of contract weighs in favor of asserting these laws.[50] Second, Plaintiff asserts that the base of operations refers to the day-to-day operations of the parties and under the agreement, all of the operations related to this agreement took place in Trinidad and Tobago.[51] Therefore, Plaintiff again asserts that the totality of the circumstances weigh in favor of applying the laws of Trinidad and Tobago because the weight of "substantial" contacts favor Trinidad and Tobago.[52]

### D. *Louisiana Machinery's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Louisiana Machinery again asserts that the choice-of-law factors weigh in favor of applying the laws of the United States.[53] Louisiana Machinery argues that the "base of operations" factor is the "location where a company performs its extensive business operations"

---

[47] *Id.* at 3.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 3–4.

[52] *Id.* at 5–6.

[53] Rec. Doc. 54-2 at 1.

and that "courts often use the term synonymously with 'principal place of business.'"[54] Louisiana Machinery argues that it is undisputed its principal place of business is in the United States and thus the laws of the United States should apply to this case despite its "transitory connection" to Trinidad and Tobago.[55] Louisiana Machinery also argues that the "law of the flag remains of 'cardinal importance'" and it is undisputed that the vessel at issue is American-flagged.[56]

Louisiana Machinery argues that the factors Plaintiff focuses on have been deemed less important by courts.[57] Specifically, Louisiana Machinery argues that that place of the injury, allegiance of the injured party, and place of the contract are less important when the case concerns an incident aboard a vessel.[58] Further, Louisiana Machinery asserts that Plaintiff's "allegiance," the inaccessibility of the forum, and the law of the forum do not support applying the laws of Trinidad and Tobago.[59] Louisiana Machinery asserts that Plaintiff's allegiance is tied to his "domicile" which in this case remains in Panama.[60] Louisiana Machinery agrees with Plaintiff that the inaccessibility of the foreign court is only relevant in the *forum non conveniens* context and is thus irrelevant here.[61] Louisiana Machinery also asserts that the law of the forum favors

---

[54] *Id.* at 1–2 (citing *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880–81 (5th Cir. 1987); *Fogleman v. ARAMCO*, 920 F.2d 278, 283-84 (5th Cir. 1991)).

[55] *Id.* at 2.

[56] *Id.* (citing *Fogleman*, 920 F.2d at 282).

[57] *Id.* at 3.

[58] *Id.* at 3 (citing *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119-20 (5th Cir. 1995)).

[59] *Id.* at 4.

[60] *Id.*

[61] *Id.*

application of the laws of the United States where Plaintiff chose to file this case in the United States.[62]

Louisiana Machinery also asserts that the evidence provided by Plaintiff fails to create a genuine issue of material fact.[63] First, Louisiana Machinery asserts that the Court should strike unauthenticated service reports showing that the wrongful act occurred in Trinidad and Tobago.[64] Louisiana Machinery also argues that Plaintiff's contention he has not had time to conduct proper discovery is unwarranted as there are no pending discovery requests and the claims have been pending for over a year.[65]

Finally, Louisiana Machinery directly rebuts Plaintiff's arguments regarding the Co-Operation Agreement between Louisiana Machinery and Massy Cat.[66] Louisiana Machinery asserts that even Plaintiff admits the contract factor "should not be considered" in its original opposition because there is no contract between Plaintiff and Louisiana Machinery and in cases where courts have found this factor persuasive, an employment contract was at issue.[67] Further, Louisiana Machinery argues that even if the Court were to consider the contract, it does not weigh in favor or finding Louisiana Machinery's base of operation was in Trinidad and Tobago.[68] Louisiana Machinery argues that the Co-Operation Agreement outlines the rights and roles of the

---

[62] *Id.* at 4–5.

[63] *Id*. at 5.

[64] *Id.*

[65] *Id.*

[66] *Id*. at 6.

[67] *Id.* (citing *Fogleman*, 920 F.2d at 282).

[68] *Id.* at 6–7.

parties, but does not indicate the frequency of any action or nature of any repairs.[69] Louisiana Machinery states that the agreement only provided that Louisiana Machinery would provide one technician per month to assist Massy Cat and that the agreement had no impact on the principal place of business of Louisiana Machinery.[70] Louisiana Machinery argues that the case cited by Plaintiff, *Phillips v. Amoco Trinidad Oil Co.*, in which the Ninth Circuit applied the tort law of Trinidad, is factually distinguishable from the instant case because there Amoco Trinidad owned the rig and had its principal place of business and offices located in Trinidad.[71]

Based on the totality of the circumstances and an analysis of each factor, Louisiana Machinery reasserts that the Court should apply the laws of the United States in this case.[72]

### III. Legal Standard

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[73] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[74] All reasonable inferences are drawn in favor of the nonmoving party,

---

[69] *Id.* at 7.

[70] *Id.*

[71] *Id.* at 7–8.

[72] *Id.* at 8–9.

[73] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[74] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[75] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[76] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[77]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[78] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[79] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[80] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by

---

[75] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[76] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[77] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[78] *Celotex*, 477 U.S. at 323.

[79] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[80] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

"unsubstantiated assertions," or "by only a scintilla of evidence."[81] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[82] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[83] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[84] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[85]

## IV. Analysis

The Parties agree that Plaintiff must demonstrate that the factors of the *Lauritzen-Romero-Rhoditis* test developed by the United States Supreme Court favor application of the laws of Trinidad and Tobago.[86] The eight factors of the test are:

(1) the place of the wrongful act,

(2) the law of the flag of the vessel involved,

(3) allegiance or domicile of the injured seaman,

---

[81] *Little*, 37 F.3d at 1075.

[82] *Anderson*, 477 U.S. at 248.

[83] *Little*, 37 F.3d at 1075.

[84] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[85] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[86] *Id.* at 5 (citing *Lauritzen v. Larsen*, 345 U.S. 571, 583-590 (1953); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382 (1959); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970)).

(4) allegiance of the defendant shipowner,

(5) the place of the shipowner's base of operation,

(6) the place where the contract of employment was made,

(7) the inaccessibility of a foreign forum, and

(8) the law of the forum.[87]

In the aggregate, analysis of these factors involves the discussion of the "facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial."[88] "The test is not a mechanical one in which the court simply counts the relevant contacts; instead, the significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law, particularly the Jones Act."[89]

Furthermore, in conducting the analysis, the Fifth Circuit has differentiated between "'a true maritime vessel, one plying the seas as an integral part of the shipping industry' and a submersible drilling rig."[90] The Fifth Circuit has further concluded that vessels that operate in a fixed area or the territorial waters of a specific country are "more analogous" to "a fixed drilling platform" than "a vessel in traditional maritime commerce."[91] The Fifth Circuit has stated that

---

[87] *Id.* (citing *Lauritzen*, 345 U.S. at 583-590; *Romero*, 358 U.S. at 382; *Hellenic Lines Ltd.*, 398 U.S. at 309).

[88] *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 182 (3rd Cir. 1995), *citing Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 441 (2d Cir.1959)).

[89] *Fogleman*, 920 F.2d at 282.

[90] *Id.* (citing *Chiazor v. Transworld Drilling Company*, 648 F.2d 1015, 1017–18 (5th Cir. 1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)).

[91] *Solano v. Gulf King* 55, 212 F.3d 902, 904–07 (5th Cir. 2000) (finding that a shrimping boat that operated exclusively in the territorial waters of one country was more similar to a "fixed drilling platform" than a

"such factors as place of wrongful act, allegiance or domicile of the injured, and place of contract," may be less substantial in the shipping context, tend to take on added significance in nontraditional contexts.[92]

Here, the vessel at issue is an Anchor Handling Supply Vessel ("AHTS"), that serviced rigs off the coast of Trinidad and Tobago.[93] While this type of vessel is mobile, it services and travels between rigs affixed to a specific location, and in this case the Court is only presented with evidence that the vessel operated off the coast of Trinidad.[94] Therefore, there is no evidence in the record that the rig was participating in activities that resemble those of the "shipping industry."[95] For the purposes of this factor, the vessel's function resembles the function of a submersible drilling rig more than a "true maritime vessel" that is a part of the "shipping industry" and the Court will analyze the factors accordingly.[96]

### A.    *Place of the Wrongful Act*

Louisiana Machinery argues that the wrongful act occurred on a vessel 35 miles off the coast of Trinidad, in international waters, thus the laws of Trinidad should not apply.[97] Further,

---

"vessel in traditional maritime commerce").

[92]  *Chiazor*, 648 F.2d at 1019.

[93]  *See* Rec. Doc. 1 at 1–2; Rec. Doc. 46-2.

[94]  *See* Rec. Docs. 43-4, 43-5, 43-6, 46-5 at 3. While the vessel operated in international waters at times, there is no evidence that it serviced rigs in the territorial waters of countries other than Trinidad.

[95]  *See Bailey*, 697 F.2d at 1275.

[96]  *See id.* The Court resolves, based on the evidence before it. that the vessel was more similar to a "nontraditional" oil rig operating in a fixed location, than a traditional shipping vessel. However, the Court acknowledges that there may be a dispute of fact regarding this classification that it will be necessary to address at trial.

[97]  Rec. Doc. 43-2 at 7.

Louisiana Machinery argues this factor "is accorded little weight in traditional maritime cases, in which the locality of the ship changes constantly."[98] Plaintiff argues that this factor weighs in favor of applying the laws of Trinidad and Tobago because Plaintiff's allegations against Louisiana Machinery pertain to "negligent distribution repair, training, service, and inspection conducted as part of the maintenance of the AHTS EDISON CHOUEST's engine equipment," which occurred in Trinidad.[99]

Neither party disputes that the maintenance of the engine occurred in Trinidad or that the engine fire occurred off the coast of Trinidad, in international waters.[100] However, the parties dispute whether the "place of the wrongful act" pertains to the location where the negligence occurred or where the injury occurred.[101] Although federal courts in other circuits have held that the "place of the wrongful act" is not necessarily where the accident occurs, but rather, where the alleged negligence occurs,[102] the Fifth Circuit has rejected that position, stating, "this court has consistently found the place of injury, not the place of other alleged negligence is the place of the wrongful act."[103] As the injury occurred in international waters, this factor does not weigh in favor of applying either the laws of the United States nor the laws of Trinidad and Tobago.

---

[98] *Id.* (citing *Lauritzen*, 345 U.S. at 583).

[99] Rec. Doc. 46 at 5.

[100] *See id;* Rec. Doc. 43-2 at 7. Section 2, Article 3 of The 1982 United Nations Convention on the Law of the Sea provides that territorial waters extend approximately 14 miles (12 nautical miles) from the low water mark of a coastal state. This accident occurred 35 miles off the coast of Trinidad, thus it occurred in international waters. *See* Rec. Docs. 43-4, 43-5, 43-6.

[101] See Recs. Doc. 43-2 at 7, 46 at 5.

[102] *See, e.g. Rationis Enterprises Inc. v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580 (2nd Cir. 2005) ("it is the state where the negligence occurs that had the greatest interest in regulating the behavior of the parties").

[103] *McClelland Engineers v. Munusamy,* 784 F.2d 1313, 1319 (5th Cir. 1986), *overruled on other grounds, In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1163 fn. 24 (5th Cir. 1987) (citing *Koke v. Phillips*

### B. *Law of the Flag of the Vessel*

Regarding the law of the flag of the vessel, Louisiana Machinery asserts the vessel is flagged under the laws of the United States and that courts hold this factor to be of "cardinal importance."[104] Plaintiff argues that this factor is irrelevant because Louisiana Machinery is not the shipowner.[105]

"The law of the flag has traditionally been of cardinal importance in determining the law applicable to maritime cases."[106] However, the Fifth Circuit has found that this factor "has no specific application" to a party that is not the shipowner.[107] As Louisiana Machinery is not the shipowner in this case, this factor has no application, even though the vessel is flagged under the laws of the United States.

### C. *Allegiance or Domicile of the Injured Seaman*

Regarding the allegiance or domicile of the injured seaman, Louisiana Machinery asserts that Plaintiff is a citizen of Panama who lives in Panama and that this factor is tied to where the injured party maintains a "domicile."[108] Plaintiff argues that while he is a citizen and resident of

---

*Petroleum Col*, 730 F.2d 211, 220 (5th Cir. 1984); *De Oliveira v. Delta Marine Drilling Co.*, 707 F.2d 843, 846 (5th Cir. 1983); *Bailey v. Dolphin International, Inc.*, 697 F.2d 1268, 1275 (5th Cir. 1983); *Zekic v. Reading & Bates Drilling Co.*, 536 F. Supp. 23, 25, (E.D. La. 1981), aff'd 680 F.2d 1107 (5th Cir. 1982)).

[104] Rec. Doc. 43-2 at 8 (citing *Fogleman*, 920 F.2d at 282).

[105] Rec. Doc. 46 at 6.

[106] *Coats*, 61 F.3d at 1120 (internal citations omitted).

[107] *Id.*

[108] Rec. Docs. 43-2 at 9, 54-2 at 4.

Panama, he worked in Trinidad aboard the AHTS EDISON CHOUEST for approximately five years before the alleged incident, thus this factor is should weigh neutrally or in his favor.[109]

The Fifth Circuit has found that regardless of where the plaintiff works, the plaintiff's domicile is the controlling issue for this factor.[110] As it is undisputed that the injured seaman is domiciled in Panama, this factor does not weigh toward application of either the laws of the United States or Trinidad and Tobago.[111]

### D.    *Allegiance of the Defendant Shipowner*

Louisiana Machinery asserts that the its own allegiance, and the allegiance of the shipowner, weigh in favor of applying the laws of the United States because both reside in Louisiana.[112] Plaintiff acknowledges that Louisiana Machinery and OSV are both domiciled with their principal place of business in the United States.[113] As there is no dispute, this factor weighs in favor of applying the laws of the United States.

However, the Fifth Circuit has stated that the law of the flag has traditionally been accorded great weight "on the pragmatic basis that there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her," but that "this rationale does not apply to a drilling vessel whose operations are at a

---

[109] Rec. Doc. 46 at 6–7.

[110] *Coats*, 61 F.2d at 1120.

[111] *See* Rec. Doc. 1 at 1.

[112] Rec. Doc. 43-2 at 9.

[113] Rec. Doc. 46 at 7.

fixed location."[114] Therefore, as the Court views the vessel at issue in this case a nontraditional vessel, it will give this factor limited weight.

## E.     *Place of the Shipowner's Base of Operations*

Regarding Louisiana Machinery's base of operations, Louisiana Machinery asserts that Louisiana is its base of operations, as it is domiciled in Louisiana.[115] Plaintiff argues that the base of operations factor weighs in favor of applying the laws of Trinidad and Tobago because "the service, repair, inspection, and maintenance of the vessel's engine were conducted in Trinidad, and those operations fell under the supervision of the technicians in Trinidad."[116]

In the context of "nontraditional" maritime activities, involving "relatively permanently based vessels," the Fifth Circuit has held that the base of operations "is the base from which the rig is operated on a day-to-day basis rather than the base of operations of the corporate or ultimate owner of the rig which is important for choice of law purposes."[117] The Fifth Circuit specifically looks at the day-to-day operations of each party as related to the claims alleged against that party.[118]

Here, Plaintiff points to service reports and deposition testimony showing that the service, repair, inspection, and maintenance of the vessel's engine took place in Trinidad and Tobago both

---

[114] *Bailey v. Dolphin Intern, Inc.*, 697 F.2d 1268, 1275 (5th Cir. 1983).

[115] Rec. Doc. 43-2 at 9–10.

[116] Rec. Doc. 46 at 8–9.

[117] *Fogleman*, 920 F.2d at 284; *see also Coats*, 61 F.2d at 1120–21.

[118] *See Fogleman*, 920 F.2d at 284 ("[T]he day-to-day operations of both ARAMCO and Fluor Arabia in the construction and electrification of ARAMCO's offshore oil platforms were conducted in Saudi Arabia."

immediately before and following the incident.[119] Louisiana Machinery disputes the authenticity of the reports and claims they are not competent summary judgment evidence as they have not been authenticated via affidavit.[120] However, even if the Court were to disregard the reports, Plaintiff presents deposition testimony in which he states that multiple "engine overhauls" were performed by Louisiana Machinery in Chaguaramas, a city in Trinidad, about a year before the alleged incident.[121] While the corporate headquarters for Louisiana Machinery may be in the United States, if the vessel was controlled and operating in Trinidad, and if Louisiana Machinery performed and coordinated its day-to-day maintenance on the vessel in Trinidad, then this factor may weigh in favor of applying the laws of Trinidad. Therefore, the deposition testimony presented by Plaintiff creates a question of fact related to where the day-to-day operations regarding the control of and maintenance on of the vessel occurred.

## F.     *Place Where the Contract of Employment was Made*

Regarding the place of contract, Louisiana Machinery argues that it has no contract with Plaintiff and that courts do not place "substantial influence on this factor," but that the contract between OSV and Louisiana Machinery to repair the vessel was executed in the United States.[122] Whereas Plaintiff points to a "Co-Operation Agreement" between Louisiana Machinery and Massy Cat, relating to their work together as authorized Caterpillar dealers in Trinidad and Tobago, which

---

[119] Rec. Docs. 46-2, 46-5 at 3, 46-6 at 6.

[120] Rec. Doc. 54-2 at 5 (citing *Select Portfolio Servicing, Inc. v. Allstate Ins. Co., Inc*., 2007 WL 4301716, at *2 (E.D. La. Dec. 4, 2007), citing Fed.R.Civ.P. 56(e)).

[121] Rec. Doc. 46-5 at 3.

[122] Rec. Doc. 43-2 at 10 (citing *Lauritzen*, 345 U.S. at 588).

provides that the agreement "shall be governed by the laws of the Republic of Trinidad and Tobago."[123]

Where courts have placed weight on contracts, they have considered employment contracts between the injured seaman and his employer.[124] However, Louisiana Machinery was not employing Plaintiff and no contract exists between the parties involved in this motion.[125] Louisiana Machinery has not demonstrated the relevancy of contracts between it and OSV to the instant motion. Therefore, the factor remains neutral for the purposes of this motion.

## G.    *Inaccessibility of a Foreign Forum*

Both parties agree that the inaccessibility of a foreign forum only applies in the *forum non conveniens* context and is thus not relevant to the instant motion.[126]

## H.    *Law of the Forum*

Finally, Louisiana Machinery asserts that "the law-of-the-forum factor in the *Lauritzen* analysis is patently United States, rather than foreign, law."[127] Louisiana Machinery also asserts that the law of the forum favors the United States because Plaintiff chose to file this case in the United States.[128] Plaintiff argues that the law of the forum is accorded little weight by courts and thus should be considered neutral here.[129]

---

[123] Rec. Doc. 53-2 at 1–3.

[124] *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 723 (5th Cir. 1990); *Coats*, 61 F.3d at 1113.

[125] *See* Rec. Doc. 43-2 at 10.

[126] *See* Rec. Docs. 54-2 at 4; 46 at 7.

[127] Rec. Doc. 43-2 at 11 (*Fogleman*, 920 F.2d at 283).

[128] Rec. Doc. 54-2 at 4–5.

[129] Rec. Doc. 46 at 10 (citing *Rationis Enterprises Inc. v. Hyundai Mipo Dockyard Co.,* 426 F.3d 580 (2nd

The Fifth Circuit has stated that "the law-of-the-forum factor in the *Lauritzen* analysis is patently United States, rather than foreign, law."[130] Additionally, the Fifth Circuit has stated that "whatever weight the law-of-the-forum factor has, therefore, tells on the side of the application of United States law."[131] Therefore, this factor weighs in favor of applying the laws of the United States, but may carry limited weight.[132]

## I.    *Analysis of All Factors*

Two factors weigh in favor of applying the laws of the United States: the allegiance of the defendant shipowner and the law of the forum. However, both of these factors carry limited weight in the context of a non-traditional drill ship that operates in a relatively fixed location.

Five factors are inapplicable to this case or neutral, including: the place of the wrongful act, the law of the flag of the vessel, the allegiance or domicile of the injured seaman, the place where a contract was made, and the inaccessibility of a foreign forum.

However, there remains a dispute of material fact regarding the shipowner's base of operations. In the context of a non-traditional vessel, a court looks to the base of day-to-day operations as related to the specific claims against the party.[133] Plaintiff provides deposition

---

Cir. 2005)).

[130] *Fogleman*, 920 F.2d at 283.

[131] *Id.*

[132] *See Rationis,* 426 F.3d at 580.

[133] *See Fogleman*, 920 F.2d at 284. The Court resolved, based on the evidence before it. that the vessel was more similar to a "nontraditional" oil rig operating in a fixed location, than a traditional shipping vessel. However, the Court acknowledges that there may be a dispute of fact regarding this classification that it will be necessary to address at trial.

testimony stating that Louisiana Machinery performed multiple "engine overhauls" in Trinidad.[134] If the vessel was controlled and operating in Trinidad, and if Louisiana Machinery performed and coordinated its day-to-day maintenance on the vessel in Trinidad, then this factor may weigh in favor of applying the laws of Trinidad. Therefore, the deposition testimony presented by Plaintiff creates a question of fact related to where the day-to-day operations regarding the control of and maintenance on the vessel occurred. Thus, summary judgment is not appropriate because there is a genuine issue of material fact in dispute.[135] Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment [136] filed by Defendant Louisiana Machinery is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___29th___ day of April, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[134] Rec. Doc. 46-5 at 3.

[135] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322–23.

[136] Rec. Doc. 43.