# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBBIN E BLYTHE                                    CIVIL ACTION

VERSUS                                             CASE NO. 17-5184

OFFSHORE SERVICE VESSELS, L.L.C., et al.           SECTION: "G" (4)

## ORDER AND REASONS

Pending before this Court is Defendant Caterpillar Inc.'s ("Caterpillar") "Motion for Summary Judgment."[1] In this litigation, Plaintiff Robbin Blythe ("Plaintiff") alleges that Defendants Louisiana Machinery Company, LLC ("Louisiana Machinery"), Offshore Service Vessels, L.L.C. ("OSV"), Caterpillar, and Massy Machinery Ltd.'s ("Massy") are liable for injuries he incurred from a fire while working aboard the vessel AHTS EDISON CHOUEST.[2] Accordingly, Plaintiff brings this action pursuant to the Jones Act,[3] general maritime law, and the tort laws of Trinidad and Tobago.[4] On August 29, 2018, the Court dismissed the claims Plaintiff brought against Caterpillar under general maritime law.[5] In the instant motion, Caterpillar argues that the laws of Trinidad and Tobago are inapplicable to Plaintiff's claims and therefore, the remaining claims pending against Caterpillar based on these laws should be dismissed with

---

[1] Rec. Doc. 52.

[2] Rec. Doc. 16.

[3] 46 U.S.C. § 30104

[4] Rec. Doc. 1 at 1.

[5] Rec. Doc. 34.

1

prejudice.[6] In opposition, Plaintiff contends that the *Lauritzen-Romero-Rhoditis* choice-of-law factors weigh in favor of applying the laws of Trinidad and Tobago.[7] Having considered the motion, the memoranda in support and opposition and the applicable law, the Court will deny the motion.

## I. Background

### A.     *Factual Background*

Plaintiff, a citizen and resident of Panama, alleges that on January 21, 2015, he suffered injuries, specifically post-traumatic stress disorder, as the result of being trapped aboard the vessel AHTS EDISON CHOEST while a fire occurred in the engine room.[8] Plaintiff alleges that at the time, he was employed as a "seaman" for OSV, a Louisiana company that owned and operated the vessel.[9] Plaintiff alleges that when the fire occurred, the vessel was located off the coast of Trinidad and Tobago.[10] Plaintiff alleges that Caterpillar manufactured the engine of the AHTS EDISON CHOEST, and provided training to technicians of their brand companies, Louisiana Machinery and Massy, in the servicing, repairing, and inspecting of its machinery and equipment.[11] Plaintiff further alleges that the inspections and/or engine work that Louisiana Machinery

---

[6] Rec. Doc. 52-2 at 3.

[7] Rec. Doc. 57 at 3–5 (citing *Lauritzen v. Larsen*, 345 U.S. 571, 583-590 (1953); *Romero v. International Terminal Operating Co*., 358 U.S. 354, 382 (1959); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970)).

[8] Rec. Doc. 1 at 1–2

[9] *Id.*

[10] *Id.*

[11] Rec. Doc. 16 at 3.

performed in November 2012 and August 2014; and that Massy performed in August 2014, December 2014, and January 2015, caused or contributed to his alleged injuries.[12]

## B.    *Procedural Background*

Plaintiff filed a complaint in this Court on May 24, 2017, bringing claims solely against OSV under the Jones Act and general maritime law.[13] Plaintiff then filed a supplemental and amended complaint on April 16, 2018, with leave of Court, adding claims against Caterpillar, Louisiana Machinery, and Massy under general maritime law and under the laws of Trinidad and Tobago.[14]

On June 12, 2018, Defendant Caterpillar filed a motion to dismiss Plaintiff's general maritime law claims against Caterpillar.[15] On July 13, 2018, Defendant Louisiana Machinery filed a similar motion to dismiss Plaintiff's general maritime law claims against Louisiana Machinery.[16] On August 29, 2018, the Court granted both motions to dismiss, dismissing Plaintiff's general maritime law claims against Caterpillar and Louisiana Machinery, but reserving all remaining claims arising under the laws of Trinidad and Tobago.[17]

On March 19, 2019, Louisiana Machinery filed a motion for summary judgment, arguing that Plaintiff cannot prove that the laws of Trinidad and Tobago apply, thus the remaining claims

---

[12] *Id.* at 4–5.

[13] Rec. Doc. 1.

[14] Rec. Doc. 16.

[15] Rec. Doc. 25.

[16] Rec. Doc. 30.

[17] Rec. Doc. 34.

based on these laws should be dismissed.[18] On April 29, 2019, the Court denied the motion, finding a dispute of material fact regarding the defendant's base of operations.[19]

On April 1, 2019, Massy filed a motion to dismiss, arguing that it does not have sufficient minimum contacts with Louisiana to establish personal jurisdiction.[20]

On April 4, 2019, Defendant Caterpillar filed the instant motion, arguing that Plaintiff has no viable claim under the laws of Trinidad and Tobago.[21] On April 16, 2019, Plaintiff filed an opposition.[22] On April 25, 2019, with leave of Court, Caterpillar filed a reply.[23]

## II. Parties' Arguments

### A.    *Caterpillar's Arguments in Support of the Motion for Summary Judgement*

In the instant motion, Caterpillar argues that the laws of Trinidad and Tobago are inapplicable to Plaintiff's claims and therefore, the remaining claims pending against Caterpillar based on these laws should be dismissed with prejudice.[24] Caterpillar argues that Plaintiff's negligence and tort claims arise under general maritime law, and that Plaintiff's claims were previously dismissed under general maritime law because the claims were not filed within the

---

[18] Rec. Doc. 43.

[19] Rec. Doc. 69.

[20] Rec. Doc. 44.

[21] Rec. Doc. 52.

[22] Rec. Doc. 57.

[23] Rec. Doc. 66.

[24] Rec. Doc. 52-2 at 3.

three-year prescriptive period.[25]

Caterpillar argues that to set aside the general maritime law and apply the laws of Trinidad and Tobago, Plaintiff must demonstrate that the factors of the *Lauritzen-Romero-Rhoditis* test developed by the United States Supreme Court favor application of the laws of Trinidad and Tobago.[26] Caterpillar asserts that the eight factors of the test are:

(1) the place of the wrongful act,

(2) the law of the flag,

(3) allegiance or domicile of the injured worker,

(4) allegiance of the defendant shipowner,

(5) the place of the contract,

(6) the inaccessibility of a foreign forum, and

(7) the law of such a foreign forum.

(8) the shipowner's base of operations.[27]

Caterpillar argues that application of the *Lauritzen-Romero-Rhoditis* factors establishes that the law of Trinidad and Tobago law does not apply to Plaintiff's claims against Caterpillar.[28]

Regarding the first factor, place of the wrongful act, Caterpillar argues that in the Fifth Circuit, the place of injury is the place of the wrongful act and that therefore, the wrongful act

---

[25] Rec. Doc. 52-2 at 2.

[26] *Id*. at 4-5 (citing *Lauritzen*, 345 U.S. at 583-590; *Hellenic Lines Ltd.*, 398 U.S. at 309).

[27] *Id.* at 4 (citing *Lauritzen*, 345 U.S. at 583–90; *Hellenic Lines Ltd.*, 398 U.S. at 309; *Fogleman v. ARAMCO (Arabian American Oil Company)*, 920 F.2d 278, 282 (5th Cir. 1991)).

[28] *Id*. at 6.

occurred on a vessel 35 miles off the coast of Trinidad.[29]  However, Caterpillar contends this factor

is accorded little weight in traditional maritime cases, where the location of the ship changes

constantly.[30]  Regarding the law of the flag of the vessel, Caterpillar asserts that while this factor

is traditionally of "cardinal importance," Caterpillar is not a shipowner, so this factor has no

specific application to them.[31]  Regarding the allegiance or domicile of the injured seaman,

Caterpillar asserts that Plaintiff is a resident of Panama, which does not suggest applicability of

the laws of Trinidad and Tobago.[32]  Regarding the allegiance of the defendant shipowner,

Caterpillar asserts that the shipowner, OSV, resides in Louisiana.[33]  Regarding the place of

contract, Caterpillar argues that it has no contract with Plaintiff and that courts do not place

substantial influence on this factor.[34]  Regarding the inaccessibility of a foreign forum, Caterpillar

argues that this factor is only relevant to *forum non conveniens*, not a choice of law analysis.[35]

Even if the factor is deemed relevant, Caterpillar contends it is a neutral factor.[36]  Caterpillar asserts

that "the law-of-the-forum factor in the *Lauritzen* analysis is patently United States, rather than

foreign, law."[37]  Lastly, regarding the base of operations for the shipowner, Caterpillar asserts that

---

[29] *Id*. at 5.

[30] *Id.* at 7 (citing *Fogleman*, 920 F.2d at 282).

[31] *Id.* at 6–7 (citing *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1120 (5th Cir. 1995).

[32] *Id.* at 7.

[33] *Id.*

[34] *Id*. at 7–8 (citing *Fogleman*, 920 F.2d at 282).

[35] *Id*. at 8–9 (citing *Coats*, 61 F.3d at 1120.

[36] *Id*.

[37] *Id.* (citing *Fogleman*, 920 F.2d at 283).

Louisiana is the base of operations for OSV.[38] Caterpillar argues that none of the *Lauritzen-Romero-Rhoditis* factors point to the applicability of Trinidad and Tobago law to Plaintiff's claims and that therefore, the Court should apply general maritime law.[39]

## B.     *Plaintiff's Arguments in Opposition to the Motion for Summary Judgement*

In response, Plaintiff does not dispute that the Court should apply the *Lauritzen-Romero-Rhoditis* choice-of-law factors, but argues that here the factors weigh in favor of applying the laws of Trinidad and Tobago.[40]

First, Plaintiff argues that the place of the wrongful act weighs in favor of applying the laws of Trinidad and Tobago because Plaintiff's allegations against Caterpillar pertain to their "negligence in designing, manufacturing, distributing, maintaining, inspecting, repairing, selling, and/or training of the technicians who inspect, maintain, and repair the machinery and equipment aboard the AHTS EDISON CHOEST," which occurred in Trinidad.[41]  Plaintiff also argues that the base of operations factor weighs in favor of applying the laws of Trinidad and Tobago because this factor "refers to the place from which the day-to-day operations of the business enterprise giving rise to the liability were conducted."[42] Here, Plaintiff argues that the alleged negligent acts and omissions giving rise to Caterpillar's liability in designing, manufacturing, distributing,

---

[38] *Id.* at 9.

[39] *Id.* at 9–10.

[40] Rec. Doc. 57 at 3–5 (citing *Lauritzen*, 345 U.S. at 583–90; *Romero*, 358 U.S. at 382; *Hellenic Lines Ltd*, 398 U.S. at 309).

[41] *Id.* at 5.

[42] *Id.* at 8 (citing *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir. 1980), *cert. denied*, 451 U.S. 920 (1981); *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970); *Chiazor v. Transworld Drilling Co. Ltd.*, 648 F.2d 1015 (5th Cir. 1981); *Marriott v. Sedco Forex International Resources. Ltd.*, 827 F. Supp. 59 (D. Mass 1993)).

maintaining, inspecting and repairing the vessel's machinery occurred almost entirely in Trinidad and Tobago.[43]

Plaintiff also argues that some factors are neutral. Regarding the law of the flag, Plaintiff argues that the factor does not apply to Caterpillar because Caterpillar is not the shipowner.[44] Regarding the allegiance or domicile of the injured seaman, Plaintiff argues that while he was born in Panama and currently lives there, he has lived in the United States previously and he worked in Trinidad aboard the AHTS EDISON CHOUEST for approximately five years before the alleged incident; accordingly Plaintiff's allegiance could be to any of these three locations and this factor should weigh neutrally.[45] Regarding the allegiance of the shipowner, Plaintiff acknowledges that Caterpillar is domiciled with its principal place of business in the United States, but argues that because Caterpillar is not the defendant shipowner, this factor has no specific application to Caterpillar.[46]

Regarding the place of contract, Plaintiff agrees that there is no contract between Plaintiff and Caterpillar, but argues that the negligent acts and omissions of Caterpillar stem from work performed pursuant to the Agreement between Louisiana Machinery and Massy.[47] Because this Agreement was executed in Trinidad and Tobago, Plaintiff argues that the place of contract weighs

---

[43] *Id.* at 8-9.

[44] *Id.* at 6.

[45] *Id.* at 6–7.

[46] *Id.* at 7.

[47] *Id.* at 9.

in favor of applying the laws of Trinidad and Tobago.[48]  Plaintiff argues that inaccessibility of the foreign forum should not be considered here because it is only relevant to a *forum non conveniens* analysis.[49]

Plaintiff argues that in totality the factors weigh in favor of the Court applying the laws of Trinidad and Tobago because Trinidad is the place where all of the events giving rise to this lawsuit took place, including the day-to-day operations concerning the repair, maintenance, service, and inspection of the AHTS EDISON CHOUEST.[50]  Plaintiff argues that the factor that weighs against applying foreign law, the law of the flag, is traditionally less important in this context.[51]  Finally, Plaintiff argues that the remaining factors, the allegiance of the plaintiff and the allegiance of the defendant shipowner, are, if anything, neutral and not relevant in the instant matter.[52]

## C.      *Caterpillar's Arguments in Further Support to the Motion for Summary Judgement*

In reply, Caterpillar again asserts that the choice-of-law factors weigh in favor of applying the laws of the United States.[53]  Caterpillar contends that Plaintiff concedes that at least four of the eight *Lauritzen-Romero-Rhoditis* factors do not support application of Trinidad law, including: (1) the law of the flag, (2) the allegiance of the defendant shipowner, (3) the inaccessibility of the

---

[48] *Id*. at 9-10 (citing Rec. Doc. 57-8 at 3).

[49] *Id*. at 10.

[50] *Id*. at 10-11.

[51] *Id*. at 11.

[52] *Id.*

[53] Rec. Doc. 66.

forum and (4) the law of the forum.[54] But Caterpillar argues that Plaintiff's arguments regarding the remaining factors misrepresent the law, the evidence, or both.[55]

Caterpillar reiterates that the place of wrongful act is the place of injury.[56] Caterpillar argues that Plaintiff merely alleges that actions by Caterpillar in Trinidad caused his injuries, but that the documents Plaintiff attaches as exhibits never reference Caterpillar.[57] Further, Caterpillar argues that Plaintiff provides no evidence to show that Caterpillar has or ever had a "base of operations" in Trinidad.[58] Caterpillar argues that Plaintiff provides no evidence establishing his allegiance to or domicile in Trinidad.[59] Caterpillar argues that Plaintiff lived in the United States, was born in Panama, and considered himself a dual citizen of the United States and Panama in response to Caterpillar's written interrogatories.[60] Plaintiff concedes that this factor is neutral and therefore, does not contend that it weighs in favor of the application of Trinidad law to Plaintiff's claim against Caterpillar.[61] Lastly, Caterpillar argues that the place of contract factor should not weigh in favor of Trinidad because Caterpillar was not a party to any contract with Plaintiff.[62]

---

[54] *Id.* at 1-2.

[55] *Id.*

[56] *Id.* at 2.

[57] *Id.* at 3.

[58] *Id.* at 4.

[59] *Id.* at 4.

[60] *Id.* (citing (Rec. Docs. 56 at 6-7, 52-3 at 1).

[61] *Id.* at 5.

[62] *Id.*

Based on the totality of the circumstances and an analysis of each factor, Caterpillar reasserts that the Court should apply the laws of the United States in this case.[63]

### III. Legal Standard

#### A. *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[64] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[65] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[66] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[67] The nonmoving party may not rest upon the pleadings, but must identify specific facts in

---

[63] *Id.* at 6.

[64] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[65] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[66] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[67] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[68]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[69] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[70] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[71] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[72] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[73] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[74] Hearsay

---

[68] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[69] *Celotex*, 477 U.S. at 323.

[70] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[71] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[72] *Little*, 37 F.3d at 1075.

[73] *Anderson*, 477 U.S. at 248.

[74] *Little*, 37 F.3d at 1075.

evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[75] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[76]

## IV. Analysis

The Parties agree that Plaintiff must demonstrate that the factors of the *Lauritzen-Romero-Rhoditis* test developed by the United States Supreme Court favor application of the laws of Trinidad and Tobago.[77] The eight factors of the test are:

(1) the place of the wrongful act,

(2) the law of the flag of the vessel involved,

(3) allegiance or domicile of the injured seaman,

(4) allegiance of the defendant shipowner,

(5) the place of the shipowner's base of operation,

(6) the place where the contract of employment was made,

(7) the inaccessibility of a foreign forum, and

(8) the law of the forum.[78]

---

[75] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987).

[76] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[77] Rec. Doc. 57 at 3–5 (citing *Lauritzen*, 345 U.S. at 583-590; *Romero*, 358 U.S. at 382; *Hellenic Lines Ltd.*, 398 U.S. at 309).

[78] *Id.* (citing *Lauritzen*, 345 U.S. at 583–90; *Romero*, 358 U.S. at 382; *Hellenic Lines Ltd.*, 398 U.S. at 309).

In the aggregate, analysis of these factors involves the discussion of the "facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial."[79] "The test is not a mechanical one in which the court simply counts the relevant contacts; instead, the significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law, particularly the Jones Act."[80]

Furthermore, in conducting the analysis, the Fifth Circuit has differentiated between "'a true maritime vessel, one plying the seas as an integral part of the shipping industry' and a submersible drilling rig."[81] The Fifth Circuit has further concluded that vessels that operate in a fixed area or the territorial waters of a specific country are "more analogous" to "a fixed drilling platform" than "a vessel in traditional maritime commerce."[82] The Fifth Circuit has stated that "such factors as place of wrongful act, allegiance or domicile of the injured, and place of contract," may be less substantial in the shipping context, tend to take on added significance in nontraditional contexts.[83]

---

[79] *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 182 (3rd Cir. 1995) (citing *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 441 (2d Cir.1959)).

[80] *Fogleman*, 920 F.2d at 282.

[81] *Bailey v. Dolphin Int'l, Inc*., 697 F.2d 1268, 1275 (5th Cir. 1983) (citing *Chiazor*, 648 F.2d at 1017–18, *cert. denied*, 455 U.S. 1019 (1982)).

[82] *Solano v. Gulf King* 55, 212 F.3d 902, 904–07 (5th Cir. 2000) (finding that a shrimping boat that operated exclusively in the territorial waters of one country was more similar to a "fixed drilling platform" than a "vessel in traditional maritime commerce").

[83] *Chiazor*, 648 F.2d at 1019.

Here, the vessel at issue is an anchor handling tug supply vessel ("AHTS"), a drill ship that was located off the coast of Trinidad and Tobago.[84] While this type of vessel is mobile, it services and travels between rigs affixed to a specific location, and in this case the Court is only presented with evidence that the vessel operated off the coast of Trinidad.[85] Therefore, there is no evidence in the record that the vessel was participating in activities that resemble those of the "shipping industry."[86] For the purposes of this factor, the vessel's function resembles the function of a submersible drilling rig more than a "true maritime vessel" that is a part of the "shipping industry" and the Court will analyze the factors accordingly.[87]

## A.     *Place of the Wrongful Act*

Caterpillar argues that the wrongful act occurred on a vessel 35 miles off the coast of Trinidad, in international waters, thus the laws of Trinidad should not apply.[88] Further, Caterpillar argues this factor "is accorded little weight in traditional maritime cases, in which the locality of the ship changes constantly."[89] Plaintiff argues that this factor weighs in favor of applying the laws of Trinidad and Tobago because Plaintiff's allegations against Caterpillar pertain to Caterpillar's "negligence in designing, manufacturing, distributing, maintaining, inspecting,

---

[84] *See* Rec. Docs. 1 at 1–2, Rec. Doc. 52-2 at 6.

[85] *See* Rec. Docs. 52-1, 52-3, 52-4. While the vessel operated in international waters at times, there is no evidence that it serviced rigs in the territorial waters of countries other than Trinidad.

[86] *See Bailey*, 697 F.2d at 1275.

[87] *See id.* The Court resolves, based on the evidence before it, that the vessel was more similar to a "nontraditional" oil rig operating in a fixed location, than a traditional shipping vessel. However, the Court acknowledges that there may be a dispute of fact regarding this classification that it will be necessary to address at trial.

[88] Rec. Doc. 52-2 at 5–6.

[89] *Id.* at 6 (citing *Fogleman*, 920 F.2d at 282).

repairing, selling, and/or training of the technicians who inspect, maintain, and repair the machinery and equipment aboard the AHTS EDISON CHOEST," which occurred in Trinidad.[90]

Neither party disputes that the maintenance of the engine occurred in Trinidad or that the engine fire occurred off the coast of Trinidad, in international waters.[91] However, the parties dispute whether the "place of the wrongful act" pertains to the location where the negligence occurred or where the injury occurred.[92] Although federal courts in other circuits have held that the "place of the wrongful act" is not necessarily where the accident occurs, but rather, where the alleged negligence occurs,[93] the Fifth Circuit has rejected that position, stating, "this court has consistently found the place of injury, not the place of other alleged negligence is the place of the wrongful act."[94] As the injury occurred in international waters, this factor does not weigh in favor of applying either the laws of the United States or the laws of Trinidad and Tobago.

---

[90] Rec. Doc. 57 at 5.

[91] *See id;* Rec. Doc. 52-2 at 5-6. Section 2, Article 3 of The 1982 United Nations Convention on the Law of the Sea provides that territorial waters extend approximately 14 miles (12 nautical miles) from the low water mark of a coastal state. This accident occurred 35 miles off the coast of Trinidad, thus it occurred in international waters.

[92] *See* Rec. Docs. 57 at 5-6, 52-2 at 5–6.

[93] *See, e.g. Rationis Enterprises Inc. v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580 (2nd Cir. 2005) ("it is the state where the negligence occurs that had the greatest interest in regulating the behavior of the parties").

[94] *McClelland Engineers v. Munusamy,* 784 F.2d 1313, 1319 (5th Cir. 1986), *overruled on other grounds*, *In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1163 fn. 24 (5th Cir. 1987) (citing *Koke v. Phillips Petroleum Col*, 730 F.2d 211, 220 (5th Cir. 1984); *De Oliveira v. Delta Marine Drilling Co*., 707 F.2d 843, 846 (5th Cir. 1983); *Bailey*, 697 F.2d at 1275; *Zekic v. Reading & Bates Drilling Co*., 536 F. Supp. 23, 25, (E.D. La. 1981), aff'd 680 F.2d 1107 (5th Cir. 1982)).

## B.    *Law of the Flag of the Vessel*

Caterpillar and Plaintiff agree that, because Caterpillar is not the owner of the ship, this factor has limited application here.[95] "The law of the flag has traditionally been of cardinal importance in determining the law applicable to maritime cases."[96] However, the Fifth Circuit has found that this factor "has no specific application" to a party that is not the shipowner.[97] As Caterpillar is not the shipowner in this case, this factor has no application, even though the vessel is flagged under the laws of the United States.

## C.    *Allegiance or Domicile of the Injured Seaman*

Regarding the allegiance or domicile of the injured seaman, Caterpillar asserts that Plaintiff is a resident of Panama, which does not suggest applicability of the laws of Trinidad and Tobago.[98] Plaintiff argues that while he was born in Panama and currently lives there, he has lived in the United States previously and he worked in Trinidad aboard the AHTS EDISON CHOUEST for approximately five years before the alleged incident; accordingly Plaintiff's allegiance could be to any of these three location and this factor should weigh neutrally.[99]

The Fifth Circuit has found that regardless of where the plaintiff works, the plaintiff's domicile is the controlling issue for this factor.[100] As it is undisputed that the injured seaman is

---

[95] *See* Rec. Docs. 57 at 5–6, 52-2 at 6–7.

[96] *Coats*, 61 F.3d at 1120 (internal citations omitted).

[97] *Id.*

[98] Rec. Doc. 52-2 at 7.

[99] Rec. Doc, 57 at 6–7.

[100] *Coats*, 61 F.3d at 1120.

domiciled in Panama, this factor does not weigh toward application of either the laws of the United States or Trinidad and Tobago.[101]

### D.  *Allegiance of the Defendant Shipowner*

Caterpillar asserts that the allegiance of the shipowner, OSV, weighs in favor of applying the laws of the United States because the shipowner in this case is a Louisiana limited liability company.[102] Plaintiff acknowledges that Caterpillar is domiciled with its principal place of business in Louisiana, but argues that because Caterpillar is not the shipowner, this factor should not be afforded significant weight.[103] The Fifth Circuit has recognized that the allegiance of the defendant should be taken into account, even when the defendant is not the shipowner.[104] As there is no dispute that both OSV and Caterpillar bear allegiance to the United States, this factor weighs in favor of applying the laws of the United States.

### E.  *Place of the Shipowner's Base of Operations*

Regarding the base of operations for the shipowner, Caterpillar asserts that Louisiana is the base of operations for OSV, the shipowner in this case.[105] Plaintiff argues that the base of operations factor weighs in favor of applying the laws of Trinidad and Tobago because this factor "refers to the place from which the day-to-day operations of the business enterprise giving rise to the liability were conducted."[106] Here, Plaintiff argues that the alleged negligent acts and

---

[101] *See* Rec. Doc. 1 at 1.

[102] Rec. Doc. 52-2 at 7.

[103] Rec. Doc. 57 at 7.

[104] *Coats*, 61 F.3d at 1120.

[105] Rec. Doc. 52-2 at 9.

[106] Rec. Doc. 57 at 8 (citing *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir. 1980), *cert. denied*,

omissions giving rise to Caterpillar's liability in designing, manufacturing, distributing, maintaining, inspecting and repairing the vessel's machinery occurred almost entirely in Trinidad and Tobago.[107]

In the context of "nontraditional" maritime activities, involving "relatively permanently based vessels," the Fifth Circuit has held that the base of operations "is the base from which the rig is operated on a day-to-day basis rather than the base of operations of the corporate or ultimate owner of the rig which is important for choice of law purposes."[108] The Fifth Circuit specifically looks at the day-to-day operations of each party as related to the claims alleged against that party.[109] Here, Plaintiff points to service reports and deposition testimony showing that the service, repair, inspection, and maintenance of the vessel's engine took place in Trinidad and Tobago before the incident.[110]

Caterpillar responds by arguing that Plaintiff provides no evidence to show that Caterpillar has or ever had a "base of operations" in Trinidad.[111] Caterpillar asserts that Plaintiff represents that documents evidence actions by Caterpillar or Caterpillar's representatives, despite the fact

---

451 U.S. 920 (1981); *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970); *Chiazor v. Transworld Drilling Co. Ltd.*, 648 F.2d 1015 (5th Cir. 1981); *Marriott v. Sedco Forex International Resources. Ltd.*, 827 F. Supp. 59 (D. Mass 1993)).

[107] *Id.* at 8–9.

[108] *Fogleman*, 920 F.2d at 284; *see also Coats*, 61 F.3d at 1120–21.

[109] *See Fogleman*, 920 F.2d at 284 ("[T]he day-to-day operations of both ARAMCO and Fluor Arabia in the construction and electrification of ARAMCO's offshore oil platforms were conducted in Saudi Arabia.").

[110] Rec. Docs. 52-3, 52-4.

[111] Rec. Doc. 66 at 4.

that these documents do not reference Caterpillar.[112] Caterpillar claims Plaintiff offers no competent summary judgment evidence to show that Caterpillar had a base of operations in Trinidad.[113]

Plaintiff presents deposition testimony in which he states that "Cat techs came to Trinidad and they would come to the vessel to assist and train Massy CAT techs" and that "there are records of service tickets showing CAT technicians did almost all repairs."[114] While the corporate headquarters for Caterpillar and OSV may be in the United States, if the vessel was controlled and operating in Trinidad, and if Caterpillar coordinated its day-to-day maintenance on the vessel in Trinidad, then this factor may weigh in favor of applying the laws of Trinidad. Therefore, the deposition testimony presented by Plaintiff creates a question of fact related to where the day-to-day operations regarding the control of and maintenance of the vessel occurred.

## F.   *Place Where the Contract of Employment was Made*

Regarding the place of contract, Caterpillar argues that it has no contract with Plaintiff and that courts do not place substantial influence on this factor.[115] Plaintiff agrees that there is no contract between Plaintiff and Caterpillar, but argues that negligent acts and omissions of Caterpillar stem from work performed pursuant to the Agreement between Louisiana Machinery

---

[112] Rec. Doc. 66 at 3.

[113] Rec. Doc. 66 at 3 –4.

[114] Rec. Doc. 57-3 at 8.

[115] Rec Doc. 52-2 at 7-8 (citing *Fogleman*, 920 F.2d at 282).

and Massy.[116]  Because this Agreement was executed in Trinidad and Tobago, Plaintiff argues that

the place of contract weighs in favor of applying the laws of Trinidad and Tobago.[117]

Where courts have placed weight on contracts, they have considered employment contracts

between the injured seaman and his employer.[118]  However, Caterpillar was not employing

Plaintiff and no contract exists between the parties involved in this motion.[119]  Therefore, this

factor remains neutral for the purposes of this motion.

## G.    *Inaccessibility of a Foreign Forum*

Both parties agree that the inaccessibility of a foreign forum only applies in the *forum non*

*conveniens* context and is thus not relevant to the instant motion.[120]

## H.    *Law of the Forum*

Finally, Caterpillar asserts that "the law-of-the-forum factor in the *Lauritzen* analysis is

patently United States, rather than foreign, law."[121]  Caterpillar also asserts that the law of the

forum favors the United States because Plaintiff chose to file this case in the United States.[122]

Plaintiff argues that the law of the forum is accorded little weight by courts and thus should be

considered neutral here.[123]

---

[116] Rec. Doc. 57 at 9.

[117] *Id*. at 9–10 (citing Rec. Doc. 57-8 at 3).

[118] *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 723 (5th Cir. 1990); *Coats*, 61 F.3d at 1113.

[119] *See* Rec. Doc. 52-2 at 7.

[120] *See* Rec. Docs. 52-2 at 8–9, 57 at 10.

[121] Rec. Doc. 52-9 (citing *Fogleman*, 920 F.2d at 283).

[122] Rec. Doc. 52-2 at 9 (citing *Fogleman*, 920 F.2d at 283).

[123] Rec. Doc. 57 at 10 (citing *Rationis Enterprises Inc. v. Hyundai Mipo Dockyard Co.,* 426 F.3d 580 (2d

The Fifth Circuit has stated that "the law-of-the-forum factor in the *Lauritzen* analysis is patently United States, rather than foreign, law."[124] Additionally, the Fifth Circuit has stated that "whatever weight the law-of-the-forum factor has, therefore, tells on the side of the application of United States law."[125] Therefore, this factor weighs in favor of applying the laws of the United States, but may carry limited weight.[126]

## I.  *Analysis of All Factors*

Two factors weigh in favor of applying the laws of the United States: the allegiance of the defendant shipowner and the law of the forum. However, both of these factors carry limited weight in the context of a non-traditional drill ship that operates in a relatively fixed location.

Five factors are inapplicable to this case or neutral, including: the place of the wrongful act, the law of the flag of the vessel, the allegiance or domicile of the injured seaman, the place where a contract was made, and the inaccessibility of a foreign forum.

However, there remains a dispute of material fact regarding the shipowner's base of operations. In the context of a non-traditional vessel, a court looks to the base of day-to-day operations as related to the specific claims against the party.[127]

---

Cir. 2005)).

[124] *Fogleman*, 920 F.2d at 283.

[125] *Id.*

[126] *See Rationis,* 426 F.3d at 580.

[127] *See Fogleman*, 920 F.2d at 284. The Court resolved, based on the evidence before it. that the vessel was more similar to a "nontraditional" oil rig operating in a fixed location, than a traditional shipping vessel. However, the Court acknowledges that there may be a dispute of fact regarding this classification that it will be necessary to address at trial.

Plaintiff provides deposition testimony stating that "Cat techs came to Trinidad and they would come to the vessel to assist and train Massy CAT techs" and that "there are records of service tickets showing CAT technicians did almost all repairs."[128] If the vessel was controlled and operating in Trinidad, and if Caterpillar coordinated its day-to-day maintenance on the vessel in Trinidad, then this factor may weigh in favor of applying the laws of Trinidad. Therefore, the deposition testimony presented by Plaintiff creates a question of fact related to where the day-to-day operations regarding the control of and maintenance on of the vessel occurred. Thus, summary judgment is not appropriate because there is a genuine issue of material fact in dispute.[129] Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment[130] filed by Caterpillar Inc. is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __24th__ day of October, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[128] Rec. Doc. 57-3 at 8.

[129] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322–23.

[130] Rec. Doc. 52.